613 F.2d 1227
 7 O.S.H. Cas.(BNA) 2089, 1980 O.S.H.D. (CCH) P 24,154
DRAVO CORPORATION, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Ray
Marshall, Secretary of Labor, Respondents.
 No. 79-1435.
 United States Court of Appeals, Third Circuit.
 Nov. 13, 1979.
Decided Jan. 14, 1980.
 
 Charles R. Volk (argued), Jane A. Lewis, Thorp, Reed & Armstrong, Pittsburgh, Pa., for petitioner.
 Ann D. Nachbar (argued), Ronald R. Glancz, Allen H. Feldman, Acting Counsel for Appellate Litigation, Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Nancy L. Southard, Acting Asst. Counsel for Appellate Litigation, U. S. Dept. of Labor, Washington, D. C., Marshall H. Harris, Regional Sol., U. S. Dept. of Labor, Philadelphia, Pa., for respondents.
 Before SEITZ, Chief Judge, ALDISERT, Circuit Judge, and HUYETT, District Judge.*
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 The major questions for decision in this petition for review of a final order of the Occupational Safety and Health Review Commission under 29 U.S.C. § 660(a) require us to decide whether the commission correctly determined the applicability of maritime standards, as well as general industry standards, to the structural shop of Dravo's Engineering Works Division, Neville Island, Pittsburgh, Pennsylvania. The administrative law judge determined that maritime standards were appropriate because the majority of the work performed in the structural shop involved the forming, welding and fitting of vessel components and was therefore "related" to "shipbuilding" as those terms are defined in Safety and Health Regulations for Shipbuilding, 29 C.F.R. § 1916.2 (1978). He issued a decision and order which also affirmed in relevant part citations issued by OSHA compliance officers, seven items of which form a separate basis of this petition for review. Dravo petitioned the commission for discretionary review of the report of the ALJ, but when no commissioner directed review, the ALJ's order became the final order of the commission by operation of law. 29 U.S.C. § 661(i). Dravo's petition to this court followed. We hold that the OSHA shipbuilding regulations do not, by their express terms, apply to a structural shop such as Dravo's. Because we are not inclined to expand the scope of the regulations beyond that expressed by the Secretary, we will grant the petition for review and set aside that part of the commission's order holding Dravo's structural shop to be subject to shipbuilding standards.
 
 I.
 
 2
 The Engineering Works Division of Dravo Corporation is engaged in the year-round manufacture of heavy equipment including barges and towboats, raw material processing machinery, material handling equipment and major components for dams, locks and power plants. The division is on a sixty-eight acre worksite on Neville Island in the Ohio River, about six miles from Pittsburgh. Plant facilities include a 1,800 foot-long waterfront on the Ohio River, a barge shop where vessels are assembled at a rate of over three per week, trade shops where vessels are outfitted, and the structural shop.
 
 
 3
 Dravo's structural shop is a general fabrication shop in which metal plates are formed, sized, and welded. The operations of the structural shop, as in any general industry fabrication shop, include processes by which metal is formed with the use of press brakes, shears, angle rolls, punch and coping machines, burning machines and welders. These plates are used in the assembly of all of Dravo's major products. Those that are to become parts of vessels are carried by railroad car from the shop on the southern side of the island across the public road that bisects the island and the plant to the boat yard area on the northern side of the island where the vessels are assembled and eventually launched. At least one barge has been assembled in the structural shop. App. at 224a-26a. Faced with this evidence, including testimony that in 1977, "51 percent of the work in the Structural Shop was marine related, that is, the product went into a boat or a barge," while "(t)he balance of the work involved material handling machinery (27%), pelletizing machines, gait hoists (20%) and spare parts (remaining per cent)," App. at 225a, 1034a-35a, the ALJ determined that maritime standards applied to activities in that shop.
 
 
 4
 The test adopted by the ALJ appears to be that if the major part of the work in a shop at a given time is "shipbuilding" by definition of OSHA regulation 29 C.F.R. § 1916.2(i), that is, "the construction of a vessel, including the installation of machinery and equipment," then the shipbuilding safety standards will apply. In announcing this formula he rejected the approach taken in another proceeding involving Dravo Corporation at OSHRC Docket No. 14818. Dravo Corp., (1976-77) OSH Dec. (CCH) P 20,787 (1976). There, in determining the appropriate standards for Dravo's pipe shop, the ALJ concluded that even though ninety per cent of the pipe shop's production was incorporated into vessels, shipbuilding standards should not apply. Relying on a Fourth Circuit decision subsequently overturned by the Supreme Court, he determined that the applicability of those standards should be limited to shipbuilding and related activities between the ship and the last "point of rest" of equipment. Dravo has thus been confronted in separate OSHRC proceedings with divergent formulations for determining what areas are to be held to shipbuilding safety standards under OSHA.
 
 II.
 
 5
 The central purpose of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 Et seq., is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions . . . ." 29 U.S.C. § 651(b). The Act authorizes the Secretary of Labor "to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce," and created the Occupational Safety and Health Review Commission "for carrying out adjudicatory functions (of the Act)." 29 U.S.C. § 651(b)(3). Each statutory employer is placed under a duty to comply with the promulgated standards. 29 U.S.C. § 654(a)(2). Normally, the Secretary's standard-setting authority is to be exercised as the product of notice and comment rule-making. 29 U.S.C. § 655(b). Within the first two years after the effective date of the Act, however, because of concern that the Act be implemented as soon as possible, Congress authorized the Secretary to "promulgate as an occupational safety or health standard . . . any established Federal standard," without regard to the rule-making provisions. 29 U.S.C. § 655(a).
 
 
 6
 The term "established Federal standard" is defined as "any operative occupational safety and health standard established by any agency of the United States and presently in effect, or contained in any Act of Congress in force on December 29, 1970." 29 U.S.C. § 652(10). The Secretary had promulgated safety standards for shipbuilding prior to 1970 under the mandate of § 41 of the Longshoremen and Harbor Workers Compensation Act.[1] These regulations were formerly to be found at 29 C.F.R. § 1502 (1971). Pursuant to his authority under 29 U.S.C. § 655(a), the Secretary promulgated regulation 29 C.F.R. § 1910.14, entitled "Shipbuilding," which provides in relevant part:
 
 
 7
 (a) Adoption and extension of established safety and health standards for shipbuilding. The standards prescribed by Part 1502 of this title and in effect on April 28, 1971, are adopted as occupational safety or health standards under section 6(a) of the Act and shall apply, according to the provisions thereof, to every employment and place of employment of every employee engaged in shipbuilding or a related employment. Each employer shall protect the employment and places of employment of each of his employees engaged in shipbuilding or a related employment, by complying with the appropriate standards prescribed by this paragraph.
 
 
 8
 Thus, the OSHA shipbuilding regulations had their genesis in the LHWCA. The courts have recognized these safety regulations as part of the federal schema both to provide compensation under LHWCA to injured harbor workers in the event of an industrial accident and to prevent accidents involving harbor workers in the course of their maritime activities. Arthur v. Flota Mercante Gran Centro Americana S. A., 487 F.2d 561, 564 (5th Cir. 1973); Grigsby v. Coastal Marine Service of Texas, Inc., 412 F.2d 1011, 1036 (5th Cir. 1969), Cert. dismissed, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970). Indeed, before the maritime standards were adopted by OSHA, a violation of the safety regulations constituted negligence per se in actions by injured longshoremen against shipowners. Arthur v. Flota Mercante Gran Centro Americana S. A., 487 F.2d at 564; Marshall v. Isthmian Lines, Inc., 334 F.2d 131, 134 (5th Cir. 1964).[2]
 
 
 9
 The Secretary has also recognized the relationship between the two statutes. Shipbuilding regulation § 1916.1 provides in part that each employer involved in shipbuilding activity shall subscribe to the requirements of § 41 of LHWCA, 33 U.S.C. § 941(a), by furnishing and maintaining employment and places of employment which are reasonably safe for his employees in all employments covered by the statute. The disposition of this petition for review requires us to determine, Inter alia, whether the coverage of the two acts is coextensive.
 
 III.
 
 10
 We start our analysis by inquiring whether the "majority of the work" test used by the ALJ is appropriate in the context of an OSHRC citation case. We think that the ALJ erred in concentrating his analysis only upon the regulations defining "shipbuilding"[3] and "related employment,"[4] while ignoring those defining "employer"[5] and "employee."[6] The former describe only the Activity to be covered by the standards; the latter include the important element of the Areas to be covered by the activity-specific regulations.
 
 
 11
 In determining the areas where Dravo may be held to maritime safety standards, it becomes necessary to consider the contentions of the parties. The Secretary would like to make the coverage of its maritime regulations as broad as possible, broader than the scope of compensation coverage under LHWCA.[7] Dravo would prefer the applicability of OSHA shipbuilding regulations to be narrower than that of coverage of shipbuilders under LHWCA. This is necessarily Dravo's position because in Dravo Corp. v. Maxin, 545 F.2d 374, 381 (3d Cir. 1976), Cert. denied, 433 U.S. 908, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977), this court held that a welder in Dravo's Neville Island structural fabrication shop was a shipbuilder meeting both the status and situs tests for coverage under LHWCA.[8] Here we face an appeal from an ALJ's determination of the applicability of shipbuilding safety standards with respect to OSHRC citations in the same shop which we held to be a situs covered by LHWCA in Maxin.
 
 A.
 
 12
 Although the courts may be increasingly willing to interpret coverage broadly when an injured plaintiff is in need of compensation, the same approach is not followed in cases implicating penal sanctions. Historically, the applicability of penal sanctions has been narrowly construed by the judiciary. This is so notwithstanding the tendency of courts to construe implementing regulations liberally, and exemptions narrowly, in order to afford workers maximum protection. Bristol Steel & Iron Works, Inc. v. OSHRC, 601 F.2d 717, 721 (4th Cir. 1979); Marshall v. Anaconda Co., 596 F.2d 370, 377 n.6 (9th Cir. 1979). We perceive a necessary distinction between our approach in interpreting LHWCA for employee compensation, on the one hand, and OSHA for imposition of penal sanctions, on the other. In so distinguishing, we accept the reasoning of Chief Judge Brown of the Fifth Circuit, who has observed:
 
 
 13
 The respondents contend that the regulations should be liberally construed to give broad coverage because of the intent of Congress to provide safe and healthful working conditions for employees. An employer, however, is entitled to fair notice in dealing with his government. Like other statutes and regulations which allow monetary penalties against those who violate them, an occupational safety and health standard must give an employer fair warning of the conduct it prohibits or requires, and it must provide a reasonably clear standard of culpability to circumscribe the discretion of the enforcing authority and its agents. . . .
 
 
 14
 If a violation of a regulation subjects private parties to criminal or civil sanctions, a regulation cannot be construed to mean what an agency intended but did not adequately express. . . . We recognize that OSHA was enacted by Congress for the purpose stated by the respondents. Nonetheless, the Secretary as enforcer of the Act has the responsibility to state with ascertainable certainty what is meant by the standards he has promulgated.
 
 
 15
 To strain the plain and natural meaning of words for the purpose of alleviating a perceived safety hazard is to delay the day when the occupational safety and health regulations will be written in clear and concise language so that employers will be better able to understand and observe them.
 
 
 16
 Diamond Roofing Co. v. OSHRC, 528 F.2d 645, 649-50 (5th Cir. 1976) (citations omitted).
 
 
 17
 Because we deal here with a penal sanction, we begin with a recognition that the coverage of an agency regulation should be no broader than what is encompassed within its terms. Accordingly, we note that definitions for both "employer" and "employee" limit coverage of the OSHA shipbuilding regulations to maritime work on "the navigable waters . . . , including dry docks, graving docks, and marine railways." 29 C.F.R. §§ 1916.2(c) & (d), Supra notes 5 & 6. These definitions do not include structural fabrication shops within their scope; they include only waters, docks, and marine railways.
 
 
 18
 This court developed a test for interpretation of the Secretary's OSHA regulations in Bethlehem Steel Corp. v. OSHRC, 573 F.2d 157, 161 (3d Cir. 1978):
 
 
 19
 The purpose of OSHA standards is to improve safety conditions in the working place, by telling employers just what they are required to do in order to prevent or minimize danger to employees. . . . The responsibility to promulgate clear and unambiguous standards is upon the Secretary. The test is not what he might possibly have intended, but what he said.
 
 
 20
 Because the Secretary has failed in his regulations to state that a structural shop is included with docks and marine railways as a place of maritime employment to which shipbuilding regulations apply, we believe that the structural shop at issue here is not to be held to shipbuilding safety standards. The Act grants the Secretary, and not OSHRC or the courts, the means and the responsibility to amend the regulation if he so desires. Diamond Roofing Co., 528 F.2d at 649; Bethlehem Steel Corp., 573 F.2d at 161. See Marshall v. Pittsburgh-Des Moines Steel Co., 584 F.2d 638, 643-44 (3d Cir. 1978).
 
 
 21
 Although the Secretary urges that the language of the definitions of "employer" and "employee" does not foreclose their applicability to areas other than waters, docks, and marine railways, we note that the definitions, See notes 5 & 6 Supra, do Not "state with ascertainable certainty what Is meant by the standards he has promulgated." Diamond Roofing Co., 528 F.2d at 649 (emphasis added). Which areas besides waters, docks, and marine railways are covered is unclear. Therefore, because we are dealing with a penalty in this case, we reject the Secretary's position that coverage of the marine regulations should be read expansively; A fortiori, we reject the position that OSHA coverage may be broader than that of LHWCA under which the shipbuilding regulations were originally promulgated. See note 7 Supra.
 
 B.
 
 22
 Dravo's position that OSHA coverage should be narrower than LHWCA coverage presents a more difficult issue. As we have noted, the purpose of these OSHA standards is to prevent injury to those harbor workers who, if injured, would be eligible for compensation under LHWCA. Longshoremen, for instance, are covered under LHWCA if they spend "at least some of their time in indisputably longshoring operations," in activities that are an integral part of the process of maritime industry. Northeast Marine Terminal Co. v. Caputo, 432 U.S. at 273, 97 S.Ct. 2348, 2362, 53 L.Ed.2d 320; P.C. Pfeiffer Co. v. Ford, --- U.S. ----, ---- N.18, 100 s.CT. 328, 337 n.18, 62 l.ED.2d 225 (1979).[9] But, as the Supreme Court noted, LHWCA focuses on workers "solely in terms of what they are doing and never in terms of where they are working." Id. at ----, 100 S.Ct. at 336. Thus, although the "majority of the work" test used here by the ALJ arguably finds some support in our Maxin decision, because of the distinction between compensation and enforcement of a penal sanction, we believe that a LHWCA compensation case cannot be controlling in an OSHRC case.[10]
 
 
 23
 Dravo would have us adopt the reasoning of another ALJ in a proceeding at OSHRC Docket No. 14818. Dravo Corp., (1976-77) OSH Dec. (CCH) P 20,787 (1976). There, the ALJ rejected applicability of the shipbuilding standards to Dravo's pipe shop although ninety percent of the work done there was marine work. But the ALJ relied on I.T.O. Corp. v. Benefits Review Board, 529 F.2d 1080 (4th Cir. 1975), Vacated, 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977). Because the only case cited in that OSHRC decision was vacated and remanded for reconsideration in light of Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320, and because the decision erroneously relied on the "last point of rest" doctrine rejected by this court in Sea-Land Service, Inc. v. Director, Office of Workers' Compensation Programs, 540 F.2d 629 (3d Cir. 1976), and by the Supreme Court in Northeast Marine Terminal Co., we reject Dravo's suggestion that we rely on the reasoning of that opinion in order to determine what areas are governed by OSHA's shipbuilding standards.
 
 
 24
 Compensation provisions of LHWCA Are broader than OSHA coverage to the extent that a worker may claim compensation even though, at the time of his injury, he was not engaged in work activity specified in the regulations, or was not engaged at that moment in maritime work at all, See note 9 Supra. For instance, in Sea-Land Service, Inc. v. Director, Office of Workers' Compensation Programs, 540 F.2d 629, a longshoreman recovered even though he was injured on a public street in the marine terminal not under the employer's control. The court did not construe the statutory coverage under 33 U.S.C. § 903(a) to be exclusive.[11] We determined that "Congress was cautious in its language, but the fact remains that it intended to expand the scope of the LHWCA to provide a federal workmen's compensation remedy for all maritime employees." 540 F.2d at 638. The broad reading we give the LHWCA in compensation cases, however, would be inappropriate for reading OSHA regulations in citation cases. Bethlehem Steel Corp., 573 F.2d at 161.
 
 
 25
 We were required to define "shipbuilding" in Dravo Corp. v. Maxin, 545 F.2d at 380, because Congress failed to supply a definition of the term in the 1972 LHWCA amendments. Dravo was therefore on notice of what Activities constitute shipbuilding. The employer was not apprised by regulation, however, of the exact inland Areas that would be considered shipbuilding sites in addition to the promulgated "dry docks, graving docks and marine railways." In contrast with his relatively broad exposure to liability in compensation cases, an employer should not be subject to penal sanctions for nonadherence to safety standards without adequate notice in the regulations of the exact contours of his responsibility.
 
 IV.
 
 26
 Dravo contends that in areas where maritime standards are applicable, it was error for the ALJ also to allow citations under general industry standards. This practice, however, is expressly provided for by regulation. 29 C.F.R. § 1910.5(c) states:
 
 
 27
 (1) If a particular standard is specifically applicable to a condition, practice, means, method, operation, or process, it shall prevail over any different general standard which might otherwise be applicable to the same condition, practice, means, method, operation, or process. . . .
 
 
 28
 (2) On the other hand, any standard shall apply according to its terms to any employment and place of employment in any industry, even though particular standards are also prescribed for the industry, as in Subpart B or Subpart R of this part, to the extent that none of such particular standards applies. . . .
 
 
 29
 The general safety standards complement the specific safety standards, of which the set of shipbuilding regulations is one example, by filling the interstices necessarily remaining after promulgation of the specific standards. The Secretary cannot be expected to have anticipated every conceivable hazardous situation in promulgating specific standards. As the Fourth Circuit has noted:
 
 
 30
 Enforcement of general safety standards in situations not covered by specific standards does not render the specific standards meaningless or unnecessary. Specific safety standards insure a minimum level of protection to employees under common conditions widely recognized as potentially hazardous as well as provide employers with a base upon which to establish an adequate safety program. While general safety standards may quite likely cover most conditions addressed by the specific standards, fairness to the employer would require the promulgation of specific safety standards where feasible. . . . Lacking the omniscience to perceive the myriad conditions to which specific standards might be addressed, however, the Secretary, in an effort to insure the safety of employees as required by the Act, must at times necessarily resort to the general safety standards.
 
 
 31
 Bristol Steel & Iron Works, Inc. v. OSHRC, 601 F.2d 717, 721 n.11 (4th Cir. 1979) (citations omitted).
 
 
 32
 Accordingly, even in areas properly citable under specific maritime standards, the Secretary may hold an employer to the general industry standards in those situations where no specific standard is applicable.V.
 
 
 33
 In addition to challenging the applicability of certain OSHA standards, Dravo argues that the inspections that led to the citations were the product of harassment. Dravo complains that the OSHA area director had ordered twenty-three previous inspections of its facility while its competitors were inspected one, two, or three times and that therefore the Secretary's inspection of the facility constituted an abuse of his discretion under 29 U.S.C. § 657(f)(1). Upon review of the record we find no error in the commission's determination that the Secretary did not abuse his discretion. The ALJ noted:
 
 
 34
 Admittedly the respondent's premises have been inspected more than would normally be expected. However, for the most part, the inspections were initiated at the instigation of complaints by respondent's employees. Under the provisions of section 8(f) of the Act (29 U.S.C. § 657(f)) it would appear that the complainant had little choice but to investigate the complaints, albeit he did have discretion with respect to the scope of the inspections.
 
 
 35
 Given the broad scope of prosecutorial discretion, it is concluded that the evidence does not warrant vacation of the citations.
 
 
 36
 App. at 1033a.
 
 VI.
 
 37
 Dravo also petitions for review of citations for seven items relating to machine guards, crane operations, and welding. We have carefully considered all the contentions presented by the petitioner. We have reviewed the factual contentions to determine whether the findings of the commission are supported by substantial evidence on the record as a whole. U. S. Steel Corp. v. OSHRC, 537 F.2d 780, 782 (3d Cir. 1976). According certain deference to the agency's construction of the regulations in question, as courts are obliged to do, we have reviewed the legal contentions to determine whether they show the commission's conclusions to be arbitrary, capricious, or an abuse of discretion. Budd Co. v. OSHRC, 513 F.2d 201, 204-05 (3d Cir. 1975). We conclude that the commission's findings are supported by substantial evidence and that its interpretation and application of its regulations were reasonable exercises of its discretion. We therefore affirm the decision of the ALJ as to these specific items.
 
 VII.
 
 38
 The petition for review will be granted and that part of the order of the commission holding OSHA shipbuilding standards applicable to the Dravo structural shop will be set aside. The remainder of the commission's order will be affirmed. Each party to pay its own costs.
 
 
 
 *
 Honorable Daniel H. Huyett, 3rd, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 33 U.S.C. § 941, entitled "Safety rules and regulations," provides in relevant part:
 (a) Every employer shall furnish and maintain employment and places of employment which shall be reasonably safe for his employees in all employments covered by this chapter and shall install, furnish, maintain, and use such devices and safeguards with particular reference to equipment used by and working conditions established by such employers as the Secretary may determine by regulation or order to be reasonably necessary to protect the life, health, and safety of such employees, and to render safe such employment and places of employment, and to prevent injury to his employees.
 
 
 [2]
 A violation of an OSHA regulation does not, however, create a private right of action against an employer for violation of its terms. Jeter v. St. Regis Paper Co., 507 F.2d 973 (5th Cir. 1975)
 
 
 [3]
 29 C.F.R. § 1916.2(i) provides: "The term 'shipbuilding' means the construction of a vessel, including the installation of machinery and equipment."
 
 
 [4]
 29 C.F.R. § 1916.2(j) provides: "The term 'related employment' means any employments performed as an incident to or in conjunction with shipbuilding work including, but not restricted to inspection, testing trials and employment as a watchman."
 
 
 [5]
 29 C.F.R. § 1916.2(c) provides:
 The term "employer" means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States, including dry docks, graving docks, and marine railways, and any of whose employees are employed, in whole or in part, in shipbuilding or related employments as defined in paragraphs (i) and (j) of this section, on the navigable waters of the United States, including dry docks, graving docks, and marine railways.
 
 
 [6]
 29 C.F.R. § 1916.2(d) provides: "The term 'employee' means any person employed in shipbuilding or related employments on the navigable waters of the United States, including dry docks, graving docks and marine railways, by an employer as defined in paragraph (c) of this section."
 
 
 [7]
 See, e. g., 29 C.F.R. § 1910.11(b), entitled "Scope and purpose," under "Subpart B Adoption and Extension of Established Federal Standards," which provides in pertinent part:
 It bears emphasis that only standards (i. e., substantive rules) relating to safety or health are adopted by any incorporations by reference of standards prescribed elsewhere in this chapter or this title. Other materials contained in the referenced parties are not adopted. Illustrations of the types of materials which are not adopted are these. The incorporations by reference of Parts 1915, 1916, 1917, 1918 in §§ 1910.13, 1910.14, 1910.15, and 1910.16 are not intended to include the discussion in those parts of the coverage of the Longshoremen's and Harbor Workers' Compensation Act or the penalty provisions of the Act.
 
 
 [8]
 The status and situs tests were subsequently approved by the Supreme Court in Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977)
 
 
 [9]
 In light of the Supreme Court's determination that "some of the time" is sufficient to trigger applicability of LHWCA, our designation of the fact that the "great majority of the work performed in the shop is related to shipbuilding or ship repair," Dravo Corp. v. Maxin, 545 F.2d at 381, as one of four factors which influenced our decision in Maxin may have reflected too narrow an interpretation of the appropriate LHWCA standard
 
 
 [10]
 We would have no trouble distinguishing Maxin in any event because in 1973, the year of Maxin's injury, the work of the structural shop was 85% Marine work, 545 F.2d at 376, but in 1977, this figure was down to 51%, a percentage which cannot be characterized as a "great majority."
 
 
 [11]
 33 U.S.C. § 903(a) provides for compensation for injuries "occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)."