

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-4-2008

# Secretary Labor v. Beverly Healthcare

Precedential or Non-Precedential: Precedential

Docket No. 06-4810

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Secretary Labor v. Beverly Healthcare" (2008). *2008 Decisions.* Paper 459.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/459

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-4810

———

SECRETARY OF LABOR,

Petitioner

v.

BEVERLY HEALTHCARE-HILLVIEW;
OCCUPATIONAL SAFETY & HEALTH REVIEW
COMMISSION,

Respondents

———

On Petition for Review of a Decision and Order
of the Occupational Safety and Health Review Commission
(OSHRC Nos. 04-1091 and 04-1092)

———

Argued June 4, 2008
Before: FISHER, JORDAN
and VAN ANTWERPEN, *Circuit Judges*.

(Filed: September 4, 2008)

Ronald J. Gottlieb (Argued)
Charles F. James
Nathaniel I. Spiller
United States Department of Labor
Office of the Solicitor
Room S-4004
200 Constitution Avenue, N.W.
Washington, DC  20210
    *Attorneys for Petitioner*

Michael S. Glassman (Argued)
Jennifer K. Swartz
Dinsmore & Shohl
255 East Fifth Street
1900 Chemed Center
Cincinnati, OH  45202

Sheldon N. Sandler
Young, Conaway, Stargatt & Taylor
1000 West Street
17th Floor, Brandywine Building
P.O. Box 391
Wilmington, DE  19899-0391
    *Attorneys for Respondent, Beverly*
    *Healthcare-Hillview*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

This case originates from the issuance of two citations by the Occupational Safety and Health Administration ("OSHA") to Beverly Healthcare-Hillview ("Beverly") for failure to compensate employees for travel expenses and non-work time spent receiving treatment pursuant to the Bloodborne Pathogens Standard, which requires employers to make treatment available "at no cost to employees" for occupational exposure to bloodborne pathogens. Beverly challenged these citations, arguing that the "at no cost" provision should be read narrowly and did not include such costs. The ALJ disagreed and upheld the citations. Beverly appealed to the Occupational Safety and Health Review Commission ("Commission"), which reversed, finding that Beverly did not have fair notice of the Secretary of Labor's ("Secretary") broad interpretation. The Secretary timely filed a petition for review. For the reasons that follow, we will grant the petition and vacate the decision of the Commission.

I.

A.

In 1970, Congress adopted the Occupational Safety and Health Act ("OSH Act") after finding that "personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments." 29 U.S.C. § 651(a). The stated purpose for the adoption of the OSH Act was "to assure so far as possible every working man and woman in the Nation

3

safe and healthful working conditions to preserve our human resources." *Id.* § 651(b). Under the OSH Act, the Secretary is empowered to "set mandatory occupational safety and health standards" for employers and to issue citations when employers fail to comply with these standards. *Id.* §§ 651(b)(3), 655, 658(a). Violations of these standards are termed "willful," "repeated," "serious," or "not serious." *Id.* § 666. "Not serious" penalties may be subject to civil fines of up to $7,000. *Id.* § 666(c). If an employer wishes to contest a citation, it is entitled to a hearing before an Administrative Law Judge ("ALJ"). 29 U.S.C. § 661(j). A party that disputes the decision of the ALJ may petition the Commission for discretionary review. *Id.*; 29 C.F.R. § 2200.91. An aggrieved party may petition the Court of Appeals for review of the Commission's final order. *Id.* § 661.

In 1991, the Secretary promulgated the Bloodborne Pathogens Standard ("BPS"), 29 C.F.R. § 1910.1030, pursuant to a specific Congressional directive aimed at combating "occupational exposures to the hepatitis B virus, the human immunodeficiency virus and other bloodborne pathogens." Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, Pub. L. No. 102-170 § 100, 105 Stat. 1107, 1113 (1992). In drafting the BPS, the Secretary acted under the authority granted by the OSH Act to

> "where appropriate . . . prescribe the type and
> frequency of medical examinations or other tests
> which shall be made available, by the employer or
> at his cost, to employees exposed to such hazards

4

in order to most effectively determine whether the health of such employees is adversely affected by such exposure."

29 U.S.C. § 655(b)(7). The BPS applies to all "occupational exposure" which might be "reasonably anticipated [to lead to employee] contact with blood or other potentially infectious materials." 29 C.F.R. § 1910.1030(a), (b). Such "exposure incidents" include "needlesticks," one of a number of events that involve "piercing mucous membranes or the skin barrier." *Id.* § 1910.1030(b). Pursuant to subsection (f)(1)(i) of the BPS, "[t]he employer shall make available the hepatitis B vaccine and vaccination series to all employees who have occupational exposure, and post-exposure evaluation and follow-up to all employees who have had an exposure incident." Additionally, under subsection (f)(1)(ii),

> [t]he employer shall ensure that all medical evaluations and procedures including the hepatitis B vaccine and vaccination series and post-exposure evaluation and follow-up, including prophylaxis, are:
>
> (A) Made available at no cost to the employee;
>
> (B) Made available to the employee at a reasonable time and place[.]

5

*Id.* § 1910.1030(f)(1)(ii). The preamble to the BPS explains the impetus for requiring employers to pay for the costs of their employees exposure incidents. It states:

> "Numerous testimony and comment on the proposed rule stated the necessity that Hepatitis B vaccination and post-exposure evaluation and follow-up be made available by the employer at no cost to the employee . . . . This is consistent with OSHA policy, as stated in the Occupational Safety and Health Act of 1970 (OSH Act) . . . . In addition, some commenters noted that an important factor in successful vaccination programs was providing the vaccination at no cost to the employee."

56 Fed. Reg. 64, 153 (1991).

OSHA has subsequently issued a series of compliance directives, stating that "[t]he term 'at no cost to the employee' means, among other things, no 'out-of-pocket' expense to the employee." *See* OSHA Compliance Directive CPL 2-2.69; CPL 2-2.44C; CPL 2-2.44D.[1] In addition, OSHA's Director of Compliance Programs issued an opinion letter on July 7, 1999 ("1999 OSHA opinion letter"), in which it addressed two

---

[1]The 1999 directive, CPL 2-2.44D, cancelled the 1992 directive, CPL 2-2.44C. The 2001 directive, CPL 2-2.69, cancelled the 1999 directive, and was in effect during all times relevant to this case.

specific questions regarding application of the BPS: (1) "[m]ust the employer either provide or pay for transportation to and from the site where the Hepatitis B vaccination will be administered?" and (2) "[a]re all activities associated with obtaining a Hepatitis B vaccination, in fact, work functions and, consequently, is all time associated with receipt of vaccination work time?" In response to the first question, OSHA stated that "[w]hile transportation may not need to be provided by the employer, its cost must be covered by the employer." The letter also addressed the second question, explaining that "when receiving the vaccine or commuting to have it administered, employees must be considered 'on-duty.'" It is undisputed that the regulation, its preamble, the compliance directives, and the 1999 OSHA opinion letter were publicly available at all relevant times during the course of this litigation.

B.

Beverly owns and operates a nursing home in Altoona, Pennsylvania. Beverly employs approximately 110 people including Vicki Pacovsky and Darryl Kosanovich, both of whom work as nurses at the nursing home. On December 8, 2002, Pacovsky received a "needlestick" while at the workplace, and on January 4, 2004, Kosanovich also received a "needlestick" while at work. Each sought treatment at the end of his or her respective shift at a designated off-site medical facility, and each returned to the off-site facility for periodic follow-up treatment during non-work hours. Beverly paid for the cost of the medical evaluations and procedures, but did not reimburse the employees for the non-work hours they spent receiving either the initial or follow-up treatments. Beverly also did not compensate the

7

employees for travel time or expenses with respect to these treatments.

After each incident, OSHA inspected the workplace and issued an "other-than-serious" citation for violation of 29 C.F.R. § 1910.1030(f)(1)(ii)(A), due to Beverly's failure to provide post-exposure evaluation and testing "at no cost to the employee."[2]  Beverly timely contested these citations.

On March 28, 2005, the ALJ issued a decision and order upholding the citations.  She held that the "at no cost" language required Beverly to pay for travel time and expenses.  She also held that Beverly was required to compensate Pacovsky and Kosanovich for the non-work time they spent undergoing the evaluations and procedures.  Her interpretation relied on the dictionary definition of "cost" and the preamble to the BPS, stating that the purpose of the regulation was to induce compliance and thereby reduce the number of infections.  She therefore determined that the employees incurred "costs" by expending time and effort securing post-exposure evaluation and treatment outside of work hours and traveling to and from the treatment facility.  She opined that these costs operated as a disincentive to employees' voluntary participation in the program, and would therefore defeat its purpose.

---

[2]The citation for the "Pacovsky" incident was issued on September 19, 2003, and the citation for the "Kosanovich" incident was issued on May 21, 2004.

Based on this analysis, the ALJ determined that the term "at no cost to the employee" was clear and unambiguous, and that regardless, any ambiguity was resolved by the Secretary's reasonable interpretations as set forth in the current OSHA compliance directive, two predecessor directives, and the 1999 OSHA opinion letter. She also found that the Secretary had provided constitutionally adequate notice that the BPS required employers to compensate employees for the travel expenses and non-work time related to their evaluation and treatment. She therefore ordered Beverly to reimburse Pacovsky and Kosanovich for the time spent receiving evaluation and treatment during non-work hours and for travel expenses.

The Commission granted Beverly's petition for discretionary review. A two-member majority found that the "at no cost" provision of the BPS was ambiguous, but that the Secretary's interpretation – that "cost" included non-work time and travel expense – was reasonable. Despite this finding, the majority held that neither the BPS itself, nor any other materials available to Beverly, explained with "ascertainable certainty" that the BPS required employers to compensate employees for travel costs and non-work time, and thus, the Secretary had failed to provide "fair notice" of its interpretation. The lone dissenting member of the Commission agreed with the majority that the provision was ambiguous and that the Secretary's interpretation was reasonable, but stated that the 1999 OSHA opinion letter provided sufficient notice of the Secretary's interpretation to allay due process concerns. The Secretary timely filed a petition for review.

## II.

We exercise jurisdiction over the Secretary's petition for review pursuant to 29 U.S.C. 660(b). We accord "substantial deference" to the Secretary's interpretation of a regulation promulgated by her agency. *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 150 (1991). "[T]he Commission, and ultimately the court of appeals, review the Secretary's interpretation to assure that it is consistent with the regulatory language and is otherwise reasonable." *Id.* at 156. We will decide all relevant questions of law, and interpret constitutional and statutory provisions. 5 U.S.C. § 706. In addition, we will "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). Issues of law are subject to plenary review. *Dole v. E. Penn Mfg. Co.*, 894 F.2d 640, 643 (3d Cir. 1990).

## III.

### A.

Before we assess whether the Secretary's interpretation of the BPS is reasonable or whether Beverly had fair notice of that interpretation, we must determine whether the meaning of regulatory language is "free from doubt." *Martin*, 499 U.S. at 150 (internal citation and quotation marks omitted). Beverly contends that, as a threshold matter, the "plain language" of the BPS unambiguously excludes compensation for non-work time and travel expenses from Beverly's obligations to its employees under the "at no cost" provision, and therefore, no alternate

10

interpretation of the Secretary could possibly be reasonable. If Beverly is correct, our inquiry would be at an end. *See Dir., OWCP v. E. Associated Coal Corp.*, 54 F.3d 141, 147 (3d Cir. 1995) ("The responsibility to promulgate clear and unambiguous standards is upon the Secretary. The test is not what he might possibly have intended, but what he said."). However, if we determine that the language is not "free from doubt," we will defer to the Secretary's interpretation if it "sensibly conforms to the purpose and wording of the regulations." *Martin*, 499 U.S. at 151.

A regulation is ambiguous when it is "not free from doubt," *Martin*, 499 U.S. at 150, and where no particular interpretation of the regulation is "compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of promulgation of the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). Because the term "cost," as utilized in the BPS, has a number of common definitions and can "comfortably bear" multiple interpretations, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997), the plain language of the BPS does not compel any one particular interpretation. *Cf. Verizon Communications, Inc. v. F.C.C.*, 535 U.S. 467, 500 (2002) ("The fact is that without any better indication of meaning than the unadorned term, the word 'cost' . . . is 'a chameleon,' . . . a 'virtually meaningless' term . . . ."). Moreover, aside from the statement in the preamble to the BPS generally stressing the importance of the "at no cost" provision in achieving the goals of the OSH Act, neither party has pointed to any indication contemporaneous with promulgation unequivocally stating the agency's intent to interpret the provision in a particular way. Therefore, and for the reasons

that follow, we conclude that the Commission did not err in determining that the language of the BPS is ambiguous.

Beverly argues that the regulation is not ambiguous and that it "fully complied with the plain language of the [BPS]." Beverly contends that the "at no cost" language unambiguously includes only the cost of post-exposure evaluation and follow-up and does not encompass compensation for non-work time or travel expenses. Beverly correctly observes that the BPS does not specifically direct employers to compensate employees for their time or travel expenses. While the Secretary interprets the term "cost" to encompass travel expenses and non-work time, Beverly alleges, without citation, that "[t]he ordinary meaning of 'cost' is the amount charged to purchase goods or services." In Beverly's view, employees have not been "charged" for non-work time or travel expenses, and are therefore not entitled to be compensated for these sums.

Beverly proffers the mandatory declination form required by the BPS as evidence that "cost" is meant to encompass only "charges" for goods and services. The form reads, in relevant part:

> If in the future I continue to have occupational exposure to blood or other potentially infectious materials and I want to be vaccinated with hepatitis B vaccine, I can receive the vaccination series at no charge to me.

29 C.F.R. § 1910.1030, App. A. In addition, Beverly points out that a number of other OSHA standards require that medical

surveillance be made available or provided at no cost to the employee, but include the additional language, "without loss of pay." *See*, *e.g.*, 29 C.F.R. § 1910.1018 (inorganic arsenic standard) (stating that medical surveillance "shall be provided without cost to the employee, without loss of pay and at a reasonable time and place").

However, as our sister circuit noted in construing a similar provision of the inorganic arsenic standard, "'cost' has many common meanings." *Phelps Dodge v. Occupational Safety and Health Review Comm'n*, 725 F.2d 1237, 1239 (9th Cir. 1984) (*Phelps Dodge II*). Some of these meanings include "'the amount or equivalent paid or given or charged . . . ,' 'whatever must be given, sacrificed, suffered, or foregone to secure a benefit . . . ,' and 'the expenditure or outlay of money, time or labor . . . .'" *See Sec'y of Labor v. Phelps Dodge Corp.*, 11 O.S.H. Cas. (BNA) 1441, 1444 (Rev. Comm'n 1983) (*Phelps Dodge I*) (citing *Webster's Third New International Dictionary* (1971)). In *Phelps Dodge I*, the Commission adopted the Secretary's broad interpretation of "cost," an interpretation virtually identical to the one proffered here, holding that "employees given examinations during non-working hours" have incurred a "cost" cognizable under the regulation and should "be paid for their time." *Phelps Dodge I*, 11 O.S.H. Cas. (BNA) at 1444. In addition, the Commission found that "[e]mployees who are not reimbursed for extra transportation expenses incur a 'cost' in the plainest and most natural sense of the word." *Id.* The Court of Appeals for the Ninth Circuit affirmed. *See Phelps Dodge II*, 725 F.2d at 1240.

13

With respect to Beverly's other arguments, the term "at no charge" in the declination letter is nearly as susceptible to broad or narrow interpretations as the term "at no cost." The terms "charge" and "cost," as used in this context, are functionally more similar than they are different. A "charge" is an "expenditure or expense incurred," which might naturally include travel expenses and compensation for non-work time. *Webster's Third New International Dictionary* 377 (1971). Moreover, Beverly's reliance on the existence of the "without loss of pay" phrase in regulations other than the BPS is misplaced for purposes of determining whether the plain language of the BPS is itself ambiguous.[3] As the *Phelps Dodge* decisions illustrate, the "at no cost" portion of the regulation may still be read broadly to include employees' non-work time and travel expenses, notwithstanding the existence of the "without loss of pay" provision in that case. *See Phelps Dodge II*, 725 F.2d at 1239.

In light of this, we agree with the unanimous view of the Commission that the language of the "at no cost" provision of the BPS is ambiguous, and therefore, as "the regulatory language is not free from doubt," we will "give effect to the [Secretary's] interpretation so long as it is reasonable." *Martin*, 499 U.S. at 150. It is that question to which we now turn.

---

[3]It may, however, affect whether Beverly received fair notice of the Secretary's interpretation. *See* Part III.C., *infra*.

14

B.

The Secretary maintains that her interpretation of the BPS's "at no cost" language to include compensation for non-work time and travel expenses is reasonable. This conclusion is also consistent with the unanimous view of the Commission, which determined that the Secretary's broad reading of the "at no cost" provision conformed to the "purpose and wording" of the BPS, and that without "such compensation, the likelihood that an employee will obtain necessary medical treatment declines." The Commission also observed that the preamble to the BPS reiterates the "at no cost" language, and restates its importance in achieving the goals of the OSH Act, therefore justifying a broad reading.

We agree with the Commission that the Secretary's broad interpretation of the "at no cost" provision is reasonable. The Secretary's interpretation is based on an accepted dictionary definition of the term "cost" and does not impermissibly strain the plain language of the regulation. Moreover, as explained by the Commission, the Secretary's broad interpretation comports with the BPS's purpose in encouraging employees to seek evaluation and treatment for occupational exposure. Plainly, compensating employees for their time and effort in undergoing testing and evaluation is an effective way to ensure that employees who have potentially been exposed to a bloodborne pathogen pursue testing.

Before us, Beverly argues that even if the Commission correctly determined that the "at no cost" provision is ambiguous, the Secretary's interpretation is nonetheless

15

unreasonable. First, Beverly argues that the Secretary's interpretation "fails to comport with the purpose and wording in the [BPS]." Curiously, Beverly does not directly address the Secretary's contention that "cost" can reasonably be interpreted as "the expenditure or outlay of money, time or labor." Nor does it make any other argument specifically contending that the language of 29 C.F.R. § 1910.1030(f)(1)(ii)(A) cannot "comfortably bear[]" the meaning assigned by the Secretary. *See Auer*, 519 U.S. at 461.

Instead, Beverly asserts that it is the Secretary's position that the source for any requirement that an employer must compensate its employees for non-work time and travel expenses would be § 1910.1030(f)(1)(ii)(B), the "[m]ade available to the employee at a reasonable time and place" provision. Building on this premise, Beverly contends that because it was cited only for violation of subsection (f)(1)(ii)(A) – the "at no cost" provision – and not for violation of subsection (f)(1)(ii)(B), it would be improper to impose costs that could only arise, pursuant to its characterization of the Secretary's position, under (f)(1)(ii)(B).

This argument is a straw man and a mischaracterization of the Secretary's position. The Secretary does not actually argue that the "at a reasonable time and place" provision is the source of the requirement that employers must compensate employees for non-work time and travel expenses. Throughout her brief, the Secretary repeatedly argues that the "at no cost" provision is the source of the requirement. The Secretary cites subsection (f)(1)(ii)(B) only for the proposition that while "it may be reasonable for an employer to require an employee to

16

seek post-exposure evaluations and procedures during non-work time," under subsection (f)(1)(ii)(B), "[i]t is not reasonable, however, to shift the cost of that choice onto an employee" under subsection (f)(1)(ii)(A). Since it is the cost, and not the reasonable availability of evaluation and treatment that is at issue here, it is plainly the Secretary's interpretation of subsection (f)(1)(ii)(A) that matters. Therefore, Beverly's argument that it was not cited for a violation of subsection (f)(1)(ii)(B) is to no avail, as its compliance with that subsection was never at issue.[4]

Consequently, the Commission did not err when it determined that the Secretary's interpretation of the "at no cost"

---

[4]Beverly does not argue that the very existence of the "reasonable time and place" provision undermines the reasonableness of the Secretary's reading of the "at no cost" provision to include compensation for travel expenses and non-work time, as it is possible that the "reasonable time and place" provision might itself conceivably be interpreted to require employers to compensate employees for travel expenses and non-work time. Nonetheless, the Secretary's construction of the regulatory framework is reasonable. A natural reading of subsection (f)(1)(ii)(B) suggests that it is aimed at ensuring that employers do not deny employees reasonable access to evaluation if they have potentially been exposed to a bloodborne pathogen. Notably, this subsection does not mention cost at all. Under this framework, subsection (f)(1)(ii)(A) therefore concerns all questions of cost. Since this view is reasonable, we will defer to the Secretary's interpretation.

17

provision was reasonable and consistent with the language and purpose of the regulation.

C.

As explained previously, a two-member majority of the Commission determined that Beverly did not have fair notice of the Secretary's broad interpretation of the BPS, despite finding that it was a reasonable interpretation. Specifically, the majority concluded that neither the regulation itself, its preamble, nor any other documentation issued by the Secretary explained with "ascertainable certainty" what the BPS requires, relying on the standard laid out in *Gates & Fox Co. v. Occupational Safety and Health Review Comm'n*, 790 F.2d 154, 156 (D.C. Cir. 1986) (citing *Diamond Roofing Co. v. Occupational Safety and Health Review Comm'n*, 528 F.2d 645, 649 (5th Cir. 1976)). The majority considered, but discounted, the premise that the 1999 OSHA opinion letter, which stated that travel expenses are compensable and that an employee is considered "on-duty" when receiving evaluation or treatment, provided sufficient notice of the Secretary's interpretation of the BPS. It discounted the 1999 letter in part because it was, in its eyes, "at odds" with a 1987 Department of Labor letter interpreting the Fair Labor Standards Act ("FLSA letter"), which stated that "[i]n order for time spent waiting for or receiving medical attention or treatment to be compensable, the visit to the doctor must be at the direction of the employer and it must occur during the employees's normal work hours on days when the employee is working." The majority stated that regardless, the Secretary had ample opportunity to "formalize" her opinion on the matter, and that even without the "conflicting" FLSA letter, the most recent

18

compliance directives were "studiously vague" in interpreting the provision.

The dissenting member of the Commission disagreed, concluding that the 1999 OSHA opinion letter militated for a finding of fair notice. The dissent observed that the letter predated the cited conduct, and directly addressed both travel expenses and non-work time compensation. The dissent questioned the majority's reliance on the FLSA letter, noting that it was promulgated by a different agency under a different statute, likely mitigating much of the possible confusion it might have caused. The dissent, relying on *Corbesco v. Sec'y of Labor*, 926 F.2d 422, 428 (5th Cir. 1991), suggested that, moreover, even if the two letters created some confusion, they at least provided "enough notice such that Beverly should have inquired of OSHA."[5] For the reasons that follow, we hold that Beverly had fair notice of the Secretary's interpretation.

---

[5]In *Corbesco*, the Court of Appeals for the Fifth Circuit determined that even where the language of a particular regulation was "imprecise," the fact that the Commission had interpreted that language in a number of decisions created a duty on the part of the employer "to at least inquire" with respect to its obligations under the regulation. *Corbesco v. Sec'y of Labor*, 926 F.2d 422, 428 (5th Cir. 1991). Because we explain, *infra*, that the Secretary provided sufficient notice to allay fair notice concerns in this case, we need not address whether Beverly had a duty to inquire.

19

Beverly argues that the Commission correctly determined that Beverly lacked constitutionally adequate notice because neither the regulation nor any other documents explained, with "ascertainable certainty," that compensation of non-work time and travel expenses was required by the BPS. Beverly asserts that "if the term 'cost' is ambiguous, the [BPS] is unconstitutional because it fails to give notice of what is required of employers." Although we have indeed determined that the "at no cost" provision is ambiguous in this context, this alone is not sufficient to deprive Beverly of fair notice.

We have previously cited with approval the line of cases enunciating "ascertainable certainty" as the applicable standard for fair notice. *See Dravo Corp. v. Occupational Safety and Health Review Comm'n*, 613 F.2d 1227, 1232 (3d Cir. 1980) (citing *Diamond Roofing*, 528 F.2d at 649). But, as the Court of Appeals for the First Circuit explained in *United States v. Lachman*, that line of cases

> do[es] not stand for the proposition that any ambiguity in a regulation bars punishment. Rather, they are addressed only to situations in which: (1) the agency had given conflicting public interpretations of the regulation, or, (2) the regulation is so vague that the ambiguity can only be resolved by deferring to the agency's own interpretation of the regulation (i.e., a situation in which the ambiguity is resolved by something comparable to a step-two analysis under *Chevron*), and the agency has failed to provide a

20

sufficient, publicly accessible statement of that
interpretation before the conduct in question.

387 F.3d 42, 57 (1st Cir. 2004). Here, because the Secretary has
not given "conflicting interpretations" of the BPS and has
provided "a sufficient, publicly accessible statement of her
interpretation" prior to the issuance of the two citations in
question, Beverly's fair notice argument fails.

First, the 1999 OSHA opinion letter adequately and
publicly stated the Secretary's position that "[transportation
cost[s] must be covered by the employer" and that "employees
must be considered 'on-duty'" when receiving post-exposure
treatment. Beverly argues that this letter is insufficient to
provide fair notice because the letter "fails to comport with the
wording in the [BPS]." In effect, Beverly contends that because
the "at no cost" provision is open to interpretation, it does not
clearly require compensation for travel expenses or non-work
time, and therefore, the 1999 interpretation letter incorrectly
interpreted the BPS. This argument is circular. It is precisely
because the regulation is ambiguous that it must be interpreted,
and the Secretary here has provided such an interpretation. As
such, the agency has not "failed to provide a sufficient, publicly
accessible statement" that the BPS required Beverly to
compensate its employees for travel expenses and non-work
time. *Lachman*, 387 F.3d at 57.

The decisions in *Phelps Dodge I* and *II* provided
additional notice to Beverly that the BPS required compensation
of employees for travel expenses and non-work time. Beverly
contends that these decisions are not analogous to the present

21

case, and in fact create additional confusion. It again points to the existence of the "without loss of pay" provision included in the regulation, asserting that it is this provision, notably absent from the BPS, that requires employers to compensate employees for non-work time. This argument fails to acknowledge that the Court in *Phelps Dodge II* clearly construed the word "cost" and the Secretary's proffered interpretation of the "without cost" provision, not the "without loss of pay" provision:

> The word "cost" has many common meanings. Here, the Secretary interpreted the phrase "without cost" in a broad sense in accordance with the preamble's statement that the exams be given "without loss to the employee to assure that they are taken." The dramatic drop in employee participation after employees were required to take examinations on their own time and to provide their own transportation demonstrates the reasonableness of the Secretary's interpretation. We affirm the decision of the Commission.

725 F.2d at 1239. Thus, regardless of some variation in language between the BPS and the inorganic arsenic standard,[6]

---

[6]Beverly also takes issue with the fact that the inorganic arsenic standard contained language in its preamble stating that "the employer is obligated to pay for the time spent taking the medical examination if it is taken outside normal working hours. . . . It is necessary that exams be convenient and without loss to the employee to assure that they are taken." 43 Fed. Reg.

these published opinions provided additional notice that the Secretary had already interpreted the term "cost" broadly, and that at least one Court of Appeals found this interpretation to be reasonable.[7]

---

19621 (1978). The BPS contains no such language either in the regulation itself or the preamble. However, as the Secretary points out, the BPS was written seven years after the Ninth Circuit upheld the Secretary's interpretation of the word "cost" in *Phelps Dodge II*. Thus, in terms of fair notice, there was no express requirement that the Secretary repeat this statement in the BPS, as the interpretation was already available to the affected parties. Nonetheless, in the preamble to the BPS, the Secretary explained that the "at no cost" provision is designed to encourage post-exposure evaluation – the same purpose enunciated in the inorganic arsenic standard. 29 C.F.R. § 1910.1030.

[7]Moreover, Beverly had additional notice of the Secretary's interpretation prior to its failure to reimburse Kosanovich for his travel expenses and non-work time. The agency issued the Pacovsky citation on September 19, 2003, and the Kosanovich needlestick did not take place until January 4, 2004. Therefore, the first citation provided Beverly with actual notice of the Secretary's interpretation of the "at no cost" provision well before the second incident and citation. Although "[t]he constitution does not demand that the employer be actually aware that the regulation is applicable to his conduct," actual notice is sufficient. *Faultless Div., Bliss & Laughlin Indus, Inc. v. Sec'y of Labor*, 674 F.2d 1177, 1185 (7th

23

Finally, Beverly argues that certain other statements of the Secretary either did not themselves provide fair notice, or in fact deprived it of fair notice by creating confusion with respect to its authoritative interpretation of the BPS, in effect creating "conflicting public interpretations of the regulation." *See Lachman*, 387 F.3d at 57. First, Beverly points to the compliance directives issued by the Secretary which state that "[t]he term 'at no cost to the employee' means, among other things, no 'out-of-pocket' expense to the employee." *See* OSHA Compliance Directives CPL 2-2.44C, CPL 2-2.44D, and CPL 2-2.69. Beverly argues that this definition does not provide notice because it is vague and open to interpretation. However, the question is not whether the directives provided fair notice, but whether they so confused Beverly as to what was required under the BPS, that the 1999 OSHA opinion letter and the *Phelps Dodge* decisions failed to provide fair notice. While the language used in the directives is not particularly helpful in resolving the issue in the current instance, it does not contravene the more applicable and specific language of the 1999 OSHA opinion letter or the *Phelps Dodge* decisions, and thus the directives are not conflicting public interpretations.

Covering now familiar ground, Beverly also contends that the "without loss of pay" provisions present in a number of other OSHA standards, *see*, *e.g.*, 29 C.F.R. § 1910.1052(j)(2)

Cir. 1982). *See also Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991) ("when embodied in a citation, the Secretary's interpretation assumes a form expressly provided for by Congress").

24

(OSHA's methylene chloride standard provides that "[t]he employer shall provide all required medical surveillance at no cost to affected employees, without loss of pay and at a reasonable time and place"), themselves created confusion sufficient to deprive it of fair notice of the Secretary's interpretation. Beverly argues it relied on the absence of this provision in the BPS in assuming that the BPS did not require compensation for travel expenses and non-work time. However, while the meaning of this provision and the reasons for its absence from the BPS are debatable, the question before us is not whether Beverly properly interpreted the "without loss of pay" provision or the meaning of its absence from the BPS. The question is whether the absence of a "without loss of pay" provision would be so confusing as to deprive Beverly of notice, given the availability of the 1999 OSHA opinion letter and the *Phelps Dodge* decisions. We do not believe that Beverly was deprived of fair notice. The 1999 OSHA opinion letter specifically addressed the issues in this case, and moreover, the *Phelps Dodge II* decision expressly relied on the interpretation of the "at no cost" provision, despite the presence of a "without loss of pay" provision in the inorganic arsenic standard. Thus, it was clear that presence or absence of the "without loss of pay" provision did not affect the Secretary's interpretation of "cost."[8]

---

[8]Beverly also does not explain why the presence or absence of the "without loss of pay" language should affect whether it received fair notice that the BPS required the payment of travel expenses.

Beverly finally points to the FLSA letter, cited by the Commission in its decision, in asserting that it was deprived of fair notice due to substantial confusion among the Secretary's pronouncements. Beverly goes so far as to contend that the FLSA letter is in "direct conflict" with the Secretary's interpretation here. However, this letter, which does not address compensation for travel expenses at all, was issued by a different agency and concerned a different regulation, which was promulgated under a different statute. Moreover, it predates the 1999 OSHA opinion letter. Therefore, because the FLSA letter does not truly conflict with the 1999 OSHA opinion letter, we disagree with the Commission's majority opinion that it deprived Beverly of fair notice. The FLSA letter interprets a regulation only tenuously related to the issue here, and at any rate, the 1999 OSHA opinion letter, which directly addresses the BPS and the "at no cost" provision, occurred later in time and would have superceded any contravening effect of the FLSA letter interpretation. Beverly could not have been so confused by the FLSA letter that it was deprived of fair notice, given the existence of the subsequent 1999 OSHA opinion letter and the *Phelps Dodge* decisions.

In sum, the combination of the 1999 OSHA opinion letter and the decisions in the *Phelps Dodge* case provided sufficient notice of the Secretary's interpretation of the "at no cost" provision of the BPS to alleviate due process concerns. While the directives, analogous regulations, and the FLSA letter may not have themselves provided sufficient notice, they did not so confuse the situation or conflict with the Secretary's other public pronouncements so as to deprive Beverly of fair notice, given the existence of the 1999 OSHA opinion letter and the decisions

26

in the *Phelps Dodge* case. *See Lachman*, 387 F.3d at 57. Therefore, we conclude that Beverly had fair notice of the Secretary's reasonable interpretation of the "at no cost" provision of the BPS.

## IV.

For the foregoing reasons, we will grant the petition for review, vacate the order of the Commission, and remand for further proceedings consistent with this opinion.